RENAULT FRÈRES SELLING BRANCH, Inc., v. SEWALL & ALDEN.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

PRINCIPAL AND AGENT (§ 190*)—PERSONAL LIABILITY OF AGENT.

    In an action to recover for repairs to an automobile which was insured in a company for which defendant was agent, evidence *held* to show that, if defendant participated in the negotiations for the repairs, plaintiff knew that it was acting as agent, and hence a verdict for plaintiff was against the evidence.

    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 718–720; Dec. Dig. § 190.*]

    McLaughlin and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Renault Frères Selling Branch, Incorporated, against Sewall & Alden. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Joseph M. Allen, of New York City, for appellant.

Walter Carroll Low, of New York City (Henry Hoelljes, of New York City, on the brief), for respondent.

LAUGHLIN, J. The defendant is a domestic corporation incorporated on the 24th day of April, 1905, and it is authorized by its certificate of incorporation to carry on a general insurance agency and brokerage business, and to act as principal, agent, broker, or attorney in buying, selling, and dealing in and managing property both real and personal and in making or obtaining loans thereon, and in buying, selling, and dealing in bonds, stocks, and other securities, and to transact all other business necessary or incidental or proper to the exercise of any or all of those powers; but it appears to have conducted only an insurance agency. It has been held liable upon the theory that it employed the plaintiff to repair an automobile which was owned by one Hamilton, and was damaged by an accident. The plaintiff is a domestic corporation engaged in importing and selling automobiles, and it also maintains an automobile repair shop and garage. The defendant was not authorized to carry on the insurance business; and it is perfectly evident that the plaintiff knew that it had not insured Hamilton's automobile against accidents. The plaintiff sold the automobile to Hamilton; and thereafter, late in May, 1909, he met with the accident, and the car was brought to its repair

shop.  Hamilton had procured from the General Accident, Fire & Life Assurance Corporation, Limited, of Perth, Scotland, through Sewall & Alden, a policy of insurance insuring him against accidents to the automobile.  That insurance company was represented in this state by Henry F. Sewall and Percy S. Alden, who conducted business under the firm name of Sewall & Alden before the incorporation of the defendant, and who continued to conduct certain business as a firm after the incorporation and procured this policy, and the defendant corporation had had nothing to do with procuring this insurance, and had no interest therein, or relations with the insurance company.  The theory of the defendant is that Sewall and Alden, individually, representing the insurance company, acted with one Grassmuck, an adjuster for the insurance company, in settling the loss caused by the accident to Hamilton's car, and that negotiations were had between Grassmuck, the firm of Sewall & Alden, the plaintiff, and Hamilton before the repairs were made only with a view to agreeing upon the amount which the insurance company would allow Hamilton on account of the loss.  The contention of the plaintiff is that the defendant corporation employed and expressly agreed to pay the plaintiff for making the repairs according to an estimate which the plaintiff made, and which the defendant accepted in advance, which, however, was to be subject to revision and to reduction by a trade discount.  The principal question litigated upon the trial and submitted to the jury was whether the defendant corporation did employ the plaintiff to make the repairs.  The finding of the jury on that question in the affirmative is clearly against the weight of the evidence.

The plaintiff had had many prior business transactions with the defendant, and in all of those transactions the defendant acted as an insurance broker, and never undertook to underwrite a policy.  The evidence tends to show that the defendant procured many policies of insurance for the plaintiff on some of which losses had occurred, which were adjusted through the defendant and paid by the insurance companies.  Before the repairs in question were made, the plaintiff made out an estimate in writing, and addressed to Hamilton, of the repairs required, and the amount it would charge therefor.  There is a conflict in the evidence as to whether or not this estimate was delivered to Hamilton, but it appears that it or a duplicate thereof was sent to defendant.  The evidence also shows that Grassmuck was not in the employ of the defendant, and had no authority to represent it.  The plaintiff's case has been presented upon the theory that Grassmuck represented the defendant.  It was not shown that the defendant or Sewall and Alden individually, or as a firm, took any part in the negotiations for or in the making of the contract under which the action was brought, other than the fact that Hamilton telephoned to the office of Sewall & Alden, at which both corporation and firm business was transacted and where Grassmuck also officed, that he had met with an accident.  The message was received by Grassmuck, and, as was his duty as an investigator and adjuster for the insurance company, he went to the plaintiff's repair shop, and in-

136 N.Y.S.—51

vestigated the accident, and opened negotiations with respect to adjusting the loss. These negotiations were with Hamilton and the plaintiff's factory superintendent; and, according to the testimony of Grassmuck, the purpose thereof was not to make a contract between the defendant, or the firm of Sewall & Alden, or even the insurance company and the plaintiff, but to arrive at an understanding between the insurance company and Hamilton with respect to the amount the company would allow him for the loss before it consented to his having the automobile repaired by the plaintiff, and before he incurred any expense. The policy of insurance was not introduced in evidence, but it is fairly to be inferred from the evidence that the insurance company reserved the right to take charge of the automobile and make or have the repairs made, or some right of control in that regard, and that this was understood by the plaintiff as well as by Hamilton and Grassmuck, and necessitated the negotiations with respect to the amount to be allowed for the repairs before Hamilton could have them made by the plaintiff. After Grassmuck in behalf of the insurance company agreed to adjust the loss at $1,750, it appears by his testimony, which, on this point, is not specifically controverted, that at the request of the plaintiff's factory superintendent Hamilton signed an acceptance of an estimate made by the plaintiff to repair the automobile, and he was thereupon requested to sign an acceptance also, and that, after some discussion, he and the superintendent dictated a letter addressed to plaintiff, to which Grassmuck signed the name "Sewall & Alden." Grassmuck further testified that on other occasions in adjusting losses he had signed the name "Sewall & Alden, Managers," and that he intended so to sign in this case, and, according to his recollection, so dictated the letter, but that he signed it hastily and without examining it carefully, and the word "Manager" was omitted. The repairs were charged to Hamilton on the books of the plaintiff, and the bill therefor was made out to him. According to the evidence adduced on the part of the plaintiff, however, the bill was delivered to the defendant only, but the evidence on the part of the defendant is, in effect, that the bill was delivered to Hamilton. On the 15th day of October, 1909, a letter was written to the plaintiff's manager signed "Sewall & Alden," in reply to a letter from him asking for an adjustment of the bill, saying, among other things, "We settled with Mr. Hamilton, handing him our draft for .$1,750, on October 6th and understood that he was to endorse the draft over to you immediately," and stating the basis of the settlement, which, it was therein asserted, had been arrived at "between yourself, Mr. Ward from our head office and Mr. Sewall." The bill rendered was for $2,735.47, and thereafter there were negotiations between plaintiff's manager, Mr. Ward, who was the head of the automobile insurance department of the General Accident, Fire & Life Assurance Corporation in Philadelphia, and Mr. Sewall, and an agreement was reached by which the cost of the repairs for which the insurance company was liable was fixed at $1,750, and thereupon a draft for that amount was sent to Hamilton. It does not appear that the plaintiff prior to the making of these repairs was aware of the fact that

Sewall & Alden constituted a firm, and were engaged in the same business as the defendant. There is evidence from which it may be inferred that through prior business transactions of a somewhat similar nature the plaintiff was led to believe that Grassmuck was authorized to represent Sewall & Alden; but in all such matters the only legitimate inference to be drawn from the evidence is that the plaintiff knew that such negotiations and adjustments were conducted by Sewall & Alden only as agents for the insurance companies.

It may be that the evidence presented a question of fact for the determination of the jury as to whether the plaintiff was not justified in assuming that Grassmuck was authorized to represent the defendant as agent of the insurance company in the negotiations which resulted in the contract under which the repairs were made; but I am of opinion that there was not sufficient evidence to take the case to the jury upon the theory that the plaintiff was led to believe that the defendant conducted the negotiations or made the contract, through Grassmuck or otherwise, in its own behalf or for itself; but, if the evidence on that point presented a question of fact, the determination of the jury thereon is against the weight and preponderance of the evidence, which clearly shows that if the defendant participated in the negotiations, or in the making of the contract, it was well known to the plaintiff that it was merely acting as agent for its principal the insurance company, and that it did not on its own responsibility employ the plaintiff to make the repairs or agree to pay therefor.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and SCOTT, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the opinion of Mr. Justice LAUGHLIN. At the trial two questions of fact were presented: (a) Whether Grassmuck had authority to represent defendant; and (b) whether the defendant promised to pay plaintiff for the repairs upon Hamilton's car. The jury found in favor of the plaintiff upon both questions, and a consideration of what appears in the record will, it seems to me, show there is sufficient evidence to sustain the findings.

The defendant is a domestic corporation engaged in the business of insurance brokerage at No. 1 Liberty street, New York City. Occupying the same office, at the same address, is a firm by the same name, composed of the same men who compose the corporation, and engaged in the same business. One Hamilton, the owner of an automobile, procured insurance on his car in a foreign insurance company represented either by the corporation or the firm, which does not clearly appear. This car was taken to the plaintiff's shop for repairs made necessary by an accident covered by the insurance. Plaintiff's vice president testified that shortly after the car reached the plaintiff's shop Grassmuck, who was connected with the office of the defendant and the firm of the same name, entered into negotiations with the plaintiff as to what it would cost to repair the car; that, on being

told approximately what the cost would be, he asked that a special reduced price be made for the defendant, which was agreed to, Grassmuck stating that the repairs would be paid for by Sewall & Alden delivering a check for the amount agreed upon to Hamilton, and requiring him to immediately indorse it over to the plaintiff; that this was necessary in order to obtain a voucher from Hamilton for the payment of the insurance money; that the estimate of the cost of the repairs, amounting to about $2,100, was thereupon prepared by the plaintiff and mailed to "Sewall & Alden, 1 Liberty Street, New York"; that thereafter Grassmuck directed that the repairs be made, and, on being requested to sign his name to the estimate, before any work had been done on the car, he refused, but instead signed the following:

"July 16th, 09.

"Messrs. Renault Frères Selling Branch, Inc.,
    "214 West 65th Street,
        "New York City.

"Dear Sirs: We have received your estimate of $2,100 for the repair of Mr. Schuyler Hamilton's Renault runabout. It is our understanding that this estimate is subject to a revision after the actual work has been completed, and we are satisfied that you proceed with the work on Mr. Hamilton's car according to the several conversations and understandings which we have had from time to time with you.

"Yours truly,        Sewall & Alden."

The repairs were thereupon made and a bill therefor made out in the name of Hamilton, and sent to Sewall & Alden, 1 Liberty street. After the sending of such bill, Grassmuck called upon plaintiff's representative, and stated the bill had been received, but defendant was entitled to a reduction, and, after negotiations, the bill was finally reduced to $1,750. According to one of plaintiff's witnesses, Grassmuck stated after the reduction was made that he would immediately take the matter up with Mr. Sewall, the president of the defendant, and arrange when a check should be given to Hamilton and indorsed over to the plaintiff. The bill was not paid, and on the 13th of October plaintiff wrote a letter to defendant addressing it, "Sewall & Alden, 1 Liberty Street, New York City," in which a settlement of the bill was requested. In response plaintiff received a letter signed Sewall & Alden, saying:

"We beg to acknowledge receipt of your favor of October 13th, asking that we have the bill of repairs on the Hamilton car settled just as soon as possible. We are very much surprised to receive this note, for the reason that we settled with Mr. Hamilton, handing him our draft for $1,750 on October 6th and understood he was to endorse the draft over to you immediately. The settlement was arrived at between yourself, Mr. Ward, from our head office, and Mr. Sewall, and was as follows:

Estimate accepted by this company ................................... $2,150
Less allowance on body as agreed with Mr. Hamilton ................    250
                                                                      _____
                                                                      $1,900
Less deduction allowed on parts ...................................    150
                                                                      _____
Net amount ........................................................ $1,750

"We will take this matter up with Mr. Hamilton and will do all possible to see that you receive the settlement in the immediate future."

Nothing further was heard from the defendant, and on November 19th plaintiff again wrote, saying:

"We were authorized by you to go ahead with the work. You accepted our estimate and it was agreed that the check in settlement would be turned over to us in the presence of Mr. Hamilton, from whom you were to get, at the time, regular release."

On the 26th of November plaintiff received a letter signed "Sewall & Alden, M. J. L.," saying:

"In reference to your recent communication regarding Mr. Hamilton, we beg to say we are very much surprised that he did not turn this draft over to you as he agreed that he would do. Our chief adjuster, however, is a friend of Mr. Hamilton's and he has been instructed to keep after him until he finds him and further to insist upon an immediate settlement with you. We do not blame you at all for being put out over this situation and thoroughly believe that the matter will be closed up to your satisfaction within a very few days."

Both of the replies to the plaintiff's letters last referred to were written or dictated by Sewall, president of the defendant.

The plaintiff's vice president also testified that upon six previous occasions Grassmuck had given orders to the plaintiff for repairs on behalf of the defendant; that on such orders repairs were made; that the bills therefor were rendered to the defendant, and paid by it. Taking the evidence all together, it seems to me there was sufficient to justify the jury in finding that Grassmuck had authority to and did act for the defendant. Such authority, if not expressly, was impliedly, given, and plaintiff had a right to rely upon it.

It is conceded in the prevailing opinion that it does not appear the plaintiff, prior to making the repairs, was aware of the fact that Sewall & Alden constituted a firm, and was engaged in the same business as the defendant. If plaintiff did not know of the existence of the firm, it is difficult to imagine upon what theory, in view of prior transactions, the defendant can here escape liability on the ground that the firm gave the order, and not the corporation. The prior transactions, as already indicated, consisted in defendant having similar repairs made and paying the bills therefor. Honesty and fair dealing required the defendant, if the transaction in question were by the firm and not by the corporation, to so inform the plaintiff.

In any view in which the evidence set out in the record is considered, it seems to me a question of fact was presented, both as to Grassmuck's authority and defendant's promise to pay, and it cannot be said that the finding of the jury upon either one is against the weight of evidence.

I therefore dissent and vote for affirmance.

CLARKE, J., concurs.